1

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                   EASTERN DIVISION

 3   MISH INTERNATIONAL MONETARY, INC.,  )
     on behalf of itself and all others  )
 4   similarly situated,                  )
                                          )
 5              Plaintiff,                 )
           vs.                            )  No. 20 C 4577
 6                                        )
     VEGA CAPITAL LONDON, LTD., et al.,   )
 7                                        )
                Defendants.               )
 8   ------------------------------------ )
     VITOL, INC.                          )
 9                                        )
                Plaintiff,                 )
10         vs.                            )  No. 24 C 1492
                                          )
11   VEGA CAPITAL LONDON, LTD., et al.,   )  Chicago, Illinois
                                          )  September 26, 2024
12              Defendants.               )  9:30 o'clock a.m.

13              TRANSCRIPT OF PROCEEDINGS -
            Telephone Motion Hearing and Ruling
14         BEFORE THE HONORABLE MANISH S. SHAH

15   APPEARANCES (Telephonically):

16   For the Plaintiff:      LOVELL STEWART HALEBIAN JACOBSON, LLP
                             BY:  MR. CHRISTOPHER M. McGRATH
17                                MR. CHRISTOPHER LOVELL
                                  MR. TRAVIS H. CARTER
18                           500 Fifth Avenue, Suite 2440
                             New York, New York  10110
19                           (212) 608-1900

20
     For Defendants Vega    AKERMAN, L.L.P.
21   Capital London and     BY:  MR. MICHAEL P. KELLY
     Adrian Spires:         750 Ninth Street, Suite 750
22                          Washington, D.C.  20001
                            (202) 824-1716
23
                            AKERMAN, L.L.P.
24                          BY:  MR. SHAWN M. TAYLOR
                            71 South Wacker Drive, 47th Floor
25                          Chicago, Illinois  60606
                            (312) 634-5700
```

**2**

```
 1    APPEARANCES (Continued - Telephonically):

 2

 3    For Defendants Vega        DOWD BENNETT, L.L.P.
      Capital London and        BY:  MS. MICHELLE NASSER
 4    Adrian Spires (Cont'd):   7676 Forsyth Boulevard, Suite 1900
                                 St. Louis, Missouri  63105
 5                               (314) 889-7300

 6

 7    For the Trader            DECHERT, L.L.P.
      Defendants:               BY:  MR. MATTHEW MAZUR
                                 1095 Avenue Of The Americas
 8                               Three Bryant Park
                                 New York, New York  10036
 9                               (212) 698-3500

10                               DECHERT, L.L.P.
                                 BY:  MR. ANTHONY LEYH
11                               2929 Arch Street
                                 Philadelphia, Pennsylvania  19104
12                               (215) 994-2288

13                               DECHERT, L.L.P.
                                 BY:  MR. RYAN DYKHOUSE
14                               25 Cannon Street
                                 London EC4M 5UB U.K.
15                               +44 020 7184 7828

16
      For Plf. Vitol, Inc.      LOCKE LORD, L.L.P.
17    in No. 24-1492:           BY:  MR. P. RUSSELL PERDEW
                                      MS. ISABELLA SEEBERG
18                               111 South Wacker Drive
                                 Chicago, Illinois  60606
19                               (312) 443-1712

20

21

22
                     COLLEEN M. CONWAY, CSR, RMR, CRR
23                        Official Court Reporter
                   219 South Dearborn Street, Room 1918
24                        Chicago, Illinois  60604
                              (312) 435-5594
25                   colleen_conway@ilnd.uscourts.gov
```

1          (Proceedings heard telephonically:)

2          THE COURT:  Good morning.  This is Judge Shah.

3          The clerk will call the case.

4          THE CLERK:  20 CV 4577, Mish International Monetary

5  versus Vega Capital.

6          THE COURT:  We have all of the attorneys' appearances

7  on file and noted, so I won't go through the roll right now.

8  But when and if you do speak, if you could just identify

9  yourself for the court reporter when you do.

10         The motion to file the reply under seal is granted,

11  and no appearance on that motion is necessary.

12         And I am sorry to impose this cost on you all, but I

13  would benefit from getting paper courtesy copies of the filings

14  on the motion for class certification and to bar plaintiff's

15  expert.  I'd like three-ring binders with tabs for each brief

16  and exhibit.

17         I don't want to ruin anyone's weekend putting binders

18  together, so I was wondering if the parties might be able to

19  put that together for me and deliver them to the courtroom by,

20  say, Wednesday, October 2nd.

21         Could Mish do that for Mish's filings?

22         MR. McGRATH:  This is Chris McGrath, Your Honor.

23         Yes.  Of course, we can do that.

24         THE COURT:  And on behalf of the trader defendants

25  and Vega, could someone take the laboring oar on that?

1    MR. MAZUR:  Yes, Your Honor.  This is Matthew Mazur.
2  We're happy to do that.

3    THE COURT:  So thank you.  I appreciate that.  So
4  courtesy copies of those filings by Wednesday, October 2nd.

5    On the *Vitol v. Vega* motion to reconsider, that
6  motion is denied.

7    I agree with Vitol that the communication with CME
8  about position limits and exemptions to the trading firm does
9  not undermine the fact that individual traders use their own
10  strategy.  It's not a significant piece of new information that
11  either, one, could not have been mentioned earlier, or, two,
12  suggest some manifest error on my part, and now I have resolved
13  that particular discovery dispute.

14    So in the case number 24 CV 1492, the motion, which
15  is docket 27, is denied.

16    I don't have rulings for you on the other discovery
17  issues with respect to BP, Shell, and Exxon Mobil.

18    Other than the motion for a stay, which was filed and
19  noticed up for next week, I don't have anything else on my
20  agenda to talk with you about.  So let's talk about that first
21  and then I'll open it up for other issues anyone would like to
22  raise.

23    I do appreciate that everyone has been working hard
24  to meet the discovery schedule, and now you are all in the
25  difficult position of having to wait for me to rule, and I

think it does make sense for all of us to think about how or what is the most cost-effective way to spend your time.

I don't have a sense of how difficult the class certification motion is or how long it will take me to resolve it. So that leads me to a question for plaintiff. Can you address how the discovery that needs to be done would be different if class certification were denied?

MR. McGRATH: Yes, Your Honor. This is Chris McGrath from Lovell Stewart.

We think that a very large portion of the discovery would have to take place regardless of the Court's ruling on the class motion, including the depositions of the Vega trader defendants, which have been scheduled for November, depositions of Vega, a 30(b)(6) deposition of Vega, a deposition of Spires, and the remaining discovery of the -- the document discovery of the defendants would proceed in any event from our perspective.

And we've been operating under the Court's scheduling order from January of 2023 to prioritize class discovery, which we have.

And, you know, sort of in response to Vega's motion to compel, we think the Court's already ruled on the stay issue back in January of 2023. And we would like to proceed and complete the remaining discovery that's left to do before the end of the discovery cutoff.

We don't think it makes sense to sort of put the

1    brakes on at the very end of the process.  This is something --

2          THE COURT:  Their point -- sorry to interrupt, but

3    their point seems to be that there is still a lot left that

4    maybe would be disproportionate if this were an

5    individual-plaintiff case and the stakes were different.

6          Do you disagree with that?

7          MR. McGRATH:  Yes, Your Honor.  We do disagree with

8    that.

9          Certainly, the discovery that I already described,

10   including the depositions and the remaining document discovery

11   of the defendants, would have to take place even in the event

12   that the Court were to deny the class motion.

13         And that, I think, is the bulk of the discovery

14   that's remaining.  And the defendants themselves have noticed

15   some depositions and other merits discovery that -- you know,

16   that is not related to the class motion.

17         So we don't think that there's any good reason to

18   delay the remaining bit of discovery.  And, again, I think the

19   vast majority of it would be occurring even if this were an

20   individual action.

21         THE COURT:  And plaintiff has no express stake in the

22   third-party discovery that Vega has been pursuing?  Am I

23   remembering that correctly on behalf of plaintiff?

24         MR. McGRATH:  That's correct, Your Honor.

25         THE COURT:  On behalf of -- let me start with Vega.

1         Your reaction to plaintiff's comment that

2  depositions -- the 30(b)(6) deposition of Vega is going to have

3  to happen no matter what, and document discovery of Vega is

4  going to have to happen no matter what, so why not finish that

5  up now?

6         MR. KELLY:  Good morning, Your Honor.  This is

7  Michael Kelly for Vega and Adrian Spires.

8         I have a different perspective than Mr. McGrath has.

9         Plaintiff's damages, individual damages, I think

10  their expert completed, is that there are no more than $30,000

11  in losses they attribute to the trader defense's trading.  And

12  even if you treble that under the antitrust claim, you're still

13  talking about a low six-figure case.  And I think in that case,

14  it doesn't make sense to go through the amount of discovery

15  that's remaining if this is, in fact, a billion-dollar class

16  action.

17         So I view the -- you know, the discovery that's been

18  provided would have to be looked at in a different viewpoint,

19  that what's been provided is far more than enough for

20  potentially a hundred-thousand-dollar claim.  And it wouldn't

21  make sense to go through with a lot of the depositions if this

22  was just an individual claim and not a class action.

23         THE COURT:  But can you maybe be a little bit more

24  detailed about that?  Why wouldn't -- even if it's a

25  hundred-thousand-dollar claim, why wouldn't plaintiff still

1    need some information from Vega, say, in the form of a 30(b)(6)

2    deposition, to prove plaintiff's individual case?

3            MR. KELLY:  Well, they might need something along

4    those lines, but certainly -- we've already produced 57,000

5    pages of documents that they could ask Vega about.  But that's

6    just one deposition.  That may be necessary.  But there's

7    certainly a lot more that would have to be done if this was a

8    class action.

9            So, for instance, the plaintiffs, as part of their

10    motion to certify the class, produced two new expert reports

11    that we've never been notified before today.  Those are people

12    that we're going to have to depose if, you know, it's a class

13    action.

14            The 30(b)(6) depositions that we've noticed of Shell

15    and BP, the ones that we intend to notice -- and we haven't

16    noticed everybody, Your Honor, because we didn't want to

17    present all this duplicative briefing to you while you were

18    still considering the first round.  But all of that, I would

19    assume, we could get through through an expert and not

20    necessarily need to have 30(b)(6) depositions of all these

21    third parties.

22            So there's a lot of work, I think, that we could take

23    off the table.

24            In terms of document discovery from Vega.  As far as

25    we're concerned, we've satisfied all the requests that have

1      been made.  There are some areas where we have disagreements

2      with plaintiff, but we're kind of at a standstill on that

3      unless plaintiffs are going to bring a motion to compel.

4              So I don't think there's a lot of document discovery

5      left to do.  There may be a few depositions.  But that, again,

6      is far different than what you would need if you're defending a

7      billion-dollar class action.

8              THE COURT:  Thank you.  Let me just turn back to

9      plaintiff for a moment and ask about your reply on the point

10     that document discovery of Vega is done.

11             MR. McGRATH:  Yeah.  We disagree, Your Honor.

12             We've been meeting and conferring with Vega's counsel

13     for many months to try to reach an agreement on a number of

14     disputed issues, and we've made, I think, substantial progress

15     with them, which has resulted in probably, I think, eight or

16     nine additional productions over the last several months.

17             But we do think that we have likely exhausted that

18     process, and we anticipate filing a motion to compel with Your

19     Honor to address the remaining disputed issues on the Vega

20     Capital and Adrian Spires document productions.

21             THE COURT:  Thank you.

22             MR. LOVELL:  Your Honor --

23             THE COURT:  Let me ask --

24             MR. LOVELL:  -- Chris Lovell.  Sorry, Judge.  If I

25     could just say one thing?  Chris Lovell for the plaintiff.

1    Just to add to what Mr. McGrath said.

2              We think the most sensitive of -- both parties have

3    worked in good faith.  We haven't been able to resolve

4    everything.  But what we haven't been able to resolve,

5    plaintiff thinks, is the most sensitive areas and the most

6    prospectively-favorable-to-plaintiff areas.

7              Thank you.  Sorry to interrupt, Your Honor.

8              THE COURT:  That's okay.  But now you have piqued my

9    curiosity.  Give me an example of what you're talking about as

10   the most prospectively favorable area.

11             MR. LOVELL:  Mr. -- Defendant Spires, who's the

12   principal of Vega Capital, according to public filings in

13   United Kingdom, took over voting control of Defendant Commins,

14   Paul Commins, who is the leader of the Vega traders' company,

15   FTF, and we've been trying to get documents.

16             So in this case, the trading defendants made $590

17   million, according to the evidence in the case, from the trades

18   on April 20th.

19             Defendant Spires has an interest in the profits of

20   two traders, according to the documents we understand, but

21   other than those -- that interest, it seems like to us, that

22   Defendant Spires and Vega have put themselves at risk by being

23   in this conspiracy, alleged, and it seems to us as though --

24   and we're looking for -- evidence of other payoffs or

25   considerations.

1          So one example is to find the documents and how it

2   comes to be that Defendant Spires takes over voting control of

3   FTF, Mr. Commins' company, which --

4          THE COURT:  And do you think --

5          MR. LOVELL:  Yeah.

6          THE COURT:  I'm sorry to interrupt, but do you think

7   that kind of transaction would be probative of a conspiracy

8   over the particular trading contracts in this case or is it

9   more --

10          MR. LOVELL:  Yes.  That's --

11          THE COURT:  -- probative of damages?

12          MR. LOVELL:  No, no, not probative of damages.  It's

13   probative of the merits of conspiracy in the relationship.

14          And there's other documents like -- the motion to

15   compel is based on liability documents and documents which we

16   think reflect a payoff or motivation of circumstances relating

17   to conspiracy, Judge.

18          And there's other examples as well which, if we put

19   in an opposition to the motion to stay, we could do this much

20   more articulately than I am explaining.

21          THE COURT:  Understood.  I understand.  I am putting

22   everyone on the spot now in the hopes that I don't need to take

23   more briefs.  And if I think I need briefs, I'll certainly let

24   you know by the end of our colloquy this morning.

25          Let me turn to the trader defendants and ask them

1    whether their depositions, as perhaps fruitless as the trader

2    defendants might think they are, would have to happen anyway,

3    even if this were a single-plaintiff case as opposed to a class

4    action?

5          And is there anything to think that what has been

6    happening in those depositions would be any different if this

7    case were not a class action?

8          MR. MAZUR:  This is Matt Mazur, Your Honor.  Thank

9    you.

10         On the first point.  It's my experience that there is

11    a difference in the number of depositions that parties decide

12    to take depending on the size of the claim.  And if there was a

13    $30,000 or a $90,000 claim, it's been my experience that there

14    may not be as many depositions taken even, if as a formal

15    matter, you might have the right to depose every defendant for

16    a full day.

17         So that's just one answer to whether I think it's

18    actually likely.

19         In terms of the substance.  You know, the longer that

20    goes on, the longer time passes, the less jeopardy a person

21    might feel, and might also affect whether you're liable to get

22    substantive testimony or not.

23         So I think both of those things are reasons why the

24    depositions either might not happen, depending on the outcome.

25    Or even if they're -- you know, there were depositions

1 eventually, the longer the wait -- and we are coming up on, for

2 example, five years since the event, in April of 2025 -- that

3 there is a possibility that one or more people might change

4 their mind.

5 THE COURT: Understood.

6 MR. MAZUR: If I could also maybe address the

7 document point? I mean, the same applies to documents, in my

8 experience, that the size of the claim does affect the kinds of

9 documents that parties seek.

10 I think Mr. Lovell already mentioned a motion to

11 compel. I think you can expect, on these sensitive matters

12 that plaintiff is seeking documents on, that there could be

13 more litigation in the form of motions to compel.

14 And, of course, I think the Court is already --

15 you're not really addressing the third -- the nonparty

16 discovery, but there is a significant amount of nonparty

17 discovery that the defendants intend to take.

18 THE COURT: On behalf of the individual trader

19 defendants, what nonparty discovery are you pursuing?

20 MR. MAZUR: Currently, we have subpoenas to the CME

21 and to the clearinghouse that handled the defendants' trades,

22 GH Financial, that have not been fully complied with, and we're

23 still pursuing discovery from those two.

24 We've also noticed a deposition that is scheduled to

25 take place in the next two weeks of a crude oil storage broker.

1    And we would expect to take additional discovery that

2  would help the Court and help us show what was happening in the

3  market on that day.  So we would expect other market

4  participants to receive subpoenas from us.

5    THE COURT:  And why wouldn't you be pursuing the CME

6  and clearinghouse subpoenas no matter what happens with class

7  certification?

8    MR. MAZUR:  We might, we might.  I think that it's

9  really the -- probably the other subpoenas that may be less

10  relevant, and it may depend on the -- you know, if there was a

11  class, the size of the class or the -- you know, exactly how it

12  was shaped.  But I think we probably would pursue those two.

13    THE COURT:  Okay.  Thank you.

14    What I would like, I think, is -- while I have a

15  sense of what I think the answer ought to be here, I would like

16  a brief from the plaintiff laying out what discovery you think,

17  on behalf of plaintiff, is going to be central to merits of an

18  individual claim, no matter what, in addition to whatever other

19  arguments you want to make about why it doesn't make any sense

20  to stay discovery at this point in the case.

21    But I am -- I suspect some of my questions have

22  suggested I am thinking about what kind of discovery is going

23  to happen no matter what, and maybe the parties are already

24  ready and have started engaging in some of that, and maybe we

25  should at least close the loop on some of that while I have the

1 rather voluminous filings I have to get through.

2 But it's also possible that I may think, as I start

3 reading these briefs and get through them, that it's going to

4 take me so long, and there are ripple effects from any

5 potential ruling, that it might be more cost-effective to stay

6 everything. Or I may end up thinking you should wrap up

7 everything while you're working at it, and then while I'm

8 working on the motions on my end, and then we'll both -- we'll

9 all be in the right position to move the case forward once I

10 issue decisions.

11 So those are the three different ways this could go.

12 I am not sure which one of those is the right answer, although

13 I have some thoughts about that. But I would benefit from a

14 little-bit-more-detailed filing from the plaintiff on that.

15 I don't need to hear more from the defendants about

16 it. I think getting something from the plaintiff will give me

17 enough to give you direction on that motion.

18 So no one needs to appear on the motion for a stay

19 that's been noticed. And if I could get a brief from the

20 plaintiff.

21 Would a week be too soon with everything else you've

22 got going on? Or could I get a brief from the plaintiff in a

23 week?

24 MR. McGRATH: Would it be -- this is Chris McGrath

25 again, Your Honor.

1    Would it be okay if we put it in on next Friday, the
2    4th?
3    THE COURT:  That's fine.
4    MR. McGRATH:  Okay.  Thank you.
5    THE COURT:  That's fine.  So I'll get a response
6    brief on the 4th and I'll try to get you a ruling on that as
7    quickly as I can.
8    I know you've got events noticed up or scheduled, and
9    you're going to need an answer on this motion quickly, so I
10   will get to it as quickly as I can.
11   On behalf of plaintiff, are there any other items on
12   your agenda for me this morning?
13   MR. McGRATH:  No, Your Honor.  Nothing further from
14   the plaintiff.
15   THE COURT:  On behalf of Vega?
16   MR. LOVELL:  Could --
17   THE COURT:  I'm sorry.  Go ahead.
18   MR. LOVELL:  No.  Chris Lovell.  Thank you, Your
19   Honor.  I just was going to thank you for the -- nothing from
20   the plaintiff, as Mr. McGrath said.  Sorry, Your Honor.
21   THE COURT:  Okay.  On behalf of Vega and Spires,
22   anything you'd like to discuss with me this morning?
23   MR. KELLY:  Yes, Your Honor.  This is Michael Kelly
24   for Vega and Spires.  Just one question of clarification.
25   So we had held off on issuing notices of depositions

1    or subpoenas for depositions of other third parties, figuring

2    that if we did that, they would then immediately file a motion

3    to quash, and then the Court's workload would be multiplied a

4    couple-fold.

5         And the concern that we have, though, is that we do

6    have a December 30th fact discovery deadline, and we wanted to

7    make sure that we noticed those in time for those to happen

8    before December 30th.  And that might be, you know, wishful

9    thinking on our end because we might get more motions to quash,

10   even if we serve them now.

11        Does the Court have a preference of how it wants us

12   to proceed?  Does it want us to proceed with issuing those

13   subpoenas or does it want us to wait, knowing the fact

14   discovery deadline is coming?

15        THE COURT:  My preference is to wait for now.  If I

16   can get you a ruling before the middle of the week of October

17   7th, that should give you enough knowledge and direction to

18   know whether you should proceed with those subpoenas or not.

19   And there would still be enough time in the deadline to do

20   that, I would think.

21        So I say hold off.

22        MR. KELLY:  Okay.  Thank you, Your Honor.

23        THE COURT:  On behalf of the individual trader

24   defendants, is there anything else on your agenda for me this

25   morning?

1      MR. MAZUR:  Your Honor, yes.  Just one thing I'd like

2   to flag for the Court.  And it relates to the briefing that was

3   filed yesterday.  And I recognize the Court's going to be

4   getting three-ring binders next week.

5      But, you know, the Court obviously instructed us not

6   to file a reply on the motion to exclude the expert, and we

7   weren't surprised at the way that plaintiff, you know, in some

8   ways, took advantage of having the last word in its

9   hundred-page briefing.

10     We were quite surprised that, after being given a

11   limit of hundred pages on the briefing, plaintiff has also

12   filed 300 -- over 300 pages of additional expert reports,

13   including a 223-page rebuttal expert report by Dr. Pirrong, and

14   also reports from two additional experts.  All of this on top

15   of the original 134-page expert report.

16     We have not had a chance, as we just got it, you

17   know, yesterday morning, this filing, to review it and assess

18   it, but we think that there is, you know -- we think it's

19   fairly outrageous, and we think there's a high likelihood that

20   we will be seeking to strike some or all of the filings that

21   occurred yesterday.  And, you know, if not, to be given an

22   opportunity to take additional discovery, frankly, you know --

23   you know, I'm not sure what the idea is, but that there's 300

24   pages of additional expert reports that the Court should be

25   relying on that we have not had a chance to depose anybody on.

1    You know, we would likely be seeking to take discovery and to
2    respond in some fashion.
3              You know, again, we haven't reviewed it.  Maybe I'm
4    wrong.  I think, you know, our arguments on -- in opposition to
5    class certification are pretty well spelled out in our briefs,
6    and we're -- you know, we may be happy to stand on our briefs,
7    but we think that the fact that so much has been filed now, you
8    know, in some ways, almost highlights the importance of the
9    class certification decision.  And, you know, the fact that we
10   may have to do this additional work on the class certification
11   is another reason to stay the case.
12             THE COURT:  Understood.  I appreciate you putting
13   that potential issue on my radar.
14             Much like I said to Vega and Spires, hold off on
15   issuing new subpoenas, hold off on filing a motion to strike or
16   a motion to file a surreply until I have had a little bit more
17   time with the materials.
18             And I'll let you know as soon as I can about the
19   scope of discovery.  And then as I make progress with the class
20   certification materials and the expert materials, I will alert
21   the parties if I think I need more information, or if I think I
22   am at a place where I am ready to entertain any other issues or
23   arguments that people may want to raise.
24             But you have flagged it.  Until I dig in, I don't
25   think it's going to be worth it to resolve whether I should

1   give you more opportunity or time to attack the filing from the

2   plaintiff.  So I think I should just dig in to the materials

3   I've got first before we do that.

4          MR. MAZUR:  Understood, Your Honor.  Thank you.

5          THE COURT:  Anything else on behalf of the individual

6   trader defendants?

7          MR. MAZUR:  No.  Thank you, Your Honor.

8          THE COURT:  I know there are a number of other people

9   listening, including the third parties, I suspect, at issue in

10   the other motions, but there's really nothing more to say about

11   those.

12          So I appreciate all of your time this morning in

13   responding to my inquiries.  It's all been very helpful.  And

14   I'll get you a ruling as soon as I can, and after I get the

15   plaintiff's brief.

16          Thank you for calling in.  We're in recess.

17          MR. LOVELL:  Thank you, Your Honor.

18     (Proceedings concluded.)

19

20

21

22

23

24

25

1        C E R T I F I C A T E

2

3

4

5              I, Colleen M. Conway, do hereby certify that the

6   foregoing is a complete, true, and accurate transcript of the

7   Telephone Motion Hearing and Ruling proceedings had in the

8   above-entitled case before the HONORABLE MANISH S. SHAH,

9   one of the Judges of said Court, at Chicago, Illinois, on

10  September 26, 2024.

11

12

13          */s/ Colleen M. Conway, CSR, RMR, CRR*        *09/30/2024*

14              Official Court Reporter                      Date
                United States District Court
15              Northern District of Illinois
                Eastern Division
16

17

18

19

20

21

22

23

24

25