# EXHIBIT 5

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of Illinois

| | | |
|---|---|---|
| Mish International Monetary Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 20-cv-04577 |
| Vega Capital London Ltd., et al. | ) | |
| | ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: BP Products North America Inc., 30 South Wacker Dr. Chicago, IL 60606 ATTN: Legal Department
C/O CT Corporation System 208 S. LaSalle St., Suite 814 Chicago, IL 60604-1101 (Registered Agent)

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: By electronic means to mkuipers@lshllp.com or in person to Miller Law LLC, 115 S. LaSalle Street, Suite 2910 Chicago Illinois 60603 | Date and Time: 9/11/2024 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 8/20/2024

| *CLERK OF COURT* | OR | |
|---|---|---|
|  |  | /s/ *Matthew D. Kuipers* |
| *Signature of Clerk or Deputy Clerk* |  | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Mish International Monetary, Inc. , who issues or requests this subpoena, are:

Matthew D. Kuipers, Lovell Stewart Halebian Jacobson LLP, 500 Fifth Avenue, Suite 2440, New York, NY 10110, 212.608.1900, mkuipers@lshllp.com

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 20-cv-04577

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case: 1:24-cv-01492 Document #: 34-5 Filed: 11/22/24 Page 4 of 14 PageID #:731

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

The definitions and instructions set forth below apply to each of the Requests for production of Documents.

**I.     DEFINITIONS**

1. "Agent" or "Agents" means past and present employees, directors, trustees, officers, commissioners, supervisors, consultants, attorneys, independent contractors, paralegals, secretaries, accountants, representatives, and any other person acting on behalf of the applicable person or entity.

2. "Block Trade" means a privately negotiated futures, options or combination transaction that meet certain quantity thresholds which are permitted to be executed apart from the public auction market as defined in Chicago Mercantile Exchange ("CME") Rule 526.

3. "Clearing Firm" means a company that works directly through an exchange's clearing house to execute trades on behalf of futures market participants.

4. "Customer" means any person or entity that utilized Your services to buy, sell, execute, place orders, clear, or otherwise trade or transact in any WTI Contract on April 17, 20, and/or 21, 2020.

5. "Delivery" or "Deliveries" means delivery as defined by New York Mercantile Exchange ("NYMEX") Rule 200104 including, but not limited to, those deliveries made under NYMEX Alternative Delivery Procedures pursuant to NYMEX Rule 200109.

6. "Document" or "Documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A) and Rule 1001 of the Federal Rules of Evidence. The term shall be used in the broadest possible sense allowable under Fed. R. Civ. P. 34(a)(1)(A), including any electronically stored information and data, written, printed, typed, photocopied, recorded, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds, or symbols, or any combination thereof.

7. "EFP" (Exchange Futures for Physical) means the simultaneous execution of an exchange futures contract and a corresponding physical transaction or a forward contract on a physical transaction as defined in CME Rule 538.

8. "FCM" (Futures Commission Merchant) means a person that solicits or accepts customer orders to buy or sell futures or options on futures contracts or that clears transactions in swaps or futures or options on futures contracts for customers and accepts money or other assets from customers in connection with such orders or transactions, including any firm that is required to be registered as an FCM with the Commodity Futures Trading Commission ("CFTC").

9. "May 2020 ICE WTI futures contract" means the ICE West Texas Intermediate (WTI) light sweet crude oil futures contract that expired on April 20, 2020, including any options on such futures contract. For the avoidance of doubt, May 2020 ICE WTI futures contract also includes any such contracts purchased or sold based on the Trading at Settlement (TAS) order type and any contracts that were cash settled.

10. "ICE" means Intercontinental Exchange, Inc. and any of its parents, subsidiaries, affiliates, employees, agents, or persons or entities acting on its behalf or under its control, including, without limitation, ICE Futures Europe.

11. "Include," "includes," and "including" shall be deemed to be followed by the words "without limitation." A list following any of these terms shall be interpreted to contain illustrative examples of the types of Documents responsive to the Request, but does not constitute an exclusive, all-encompassing, or exhaustive listing of every type of Document responsive to the request and shall not be deemed in any way to qualify, limit, or restrict the scope of the request.

12. "Market Participant" means any person or entity that bought, sold, bid or offered for, or held an open position in a WTI Contract, or held an open position in an Option on a WTI Contract on April 17, April 20 or April 21, 2020.

13. "May 2020 NYMEX WTI futures contract" means the NYMEX West Texas Intermediate (WTI) light sweet crude oil futures contract that expired on April 21, 2020, including options on such futures contract. For the avoidance of doubt, May 2020 NYMEX WTI

futures contract also includes any such contracts purchased or sold based on the Trading at Settlement (TAS) order type and any contracts settled by physical Delivery.

14. "NYMEX" means the New York Mercantile Exchange and any of its parents (including, but not limited to, CME Group), subsidiaries, affiliates, employees, agents, or persons or entities acting on its behalf or under its control.

15. "Option" means any option contract on a WTI Contract.

16. "Person" or "person" means any natural or legal persons, any Defendant, agencies, departments, firms, partnerships, associations, joint ventures, corporations, proprietorships, or other business entities and any management, business, or governmental organization, or any other group of natural persons.

17. "Request" or "Requests" refers generally to the requests set forth herein.

18. "TAS" (Trade at Settlement) means an order type that specifies the day's settlement price, including any premium or discount.

19. "WTI Contract" means the NYMEX West Texas Intermediate (WTI) crude oil futures contract.

20. "You" or "Your" means or refers to BP Products North America Inc. and any and all of its affiliates subsidiaries, directors, divisions, exchanges, subdivisions, groups, offices, branches, departments, employees, consultants, Agents, representatives, accountants, predecessors or successors, and assigns wherever they may be situated, and all other persons who have an interest in BP Products North America Inc. its subsidiaries, affiliates, divisions, joint ventures, or any other legal entity in which BP Products North America Inc. has an interest.

## II.    INSTRUCTIONS

1. Your obligation to respond to these Requests is a continuing one.

2. In producing Documents and other materials, You shall produce all responsive Documents in Your possession, custody, or control, or in the possession or control of Your directors, officers, Agents, employees, representatives, subsidiaries, managing agents, affiliates, or

investigators, or by Your attorneys or their Agents, employees, representatives, or investigators.

3. As used in these Requests, and as necessary to bring within their scope any Document that might otherwise be construed to be outside their scope, (a) the connectors "and" and "or" shall be construed both conjunctively and disjunctively; (b) the terms "any" and "all" shall be construed as "any and all;" (c) the singular of any word shall include the plural and vice versa; and; (d) the use of any verb in any tense shall be construed as the use of that verb in all other tenses.

4. All Documents that are produced in electronic format should be provided with: (i) Group IV "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full extracted text, with full extracted text files provided on a Document level; and (iv) all metadata fields associated with each electronic Document.

5. Data are to be produced electronically in a spreadsheet or nonproprietary database format. For data in trading systems or other proprietary databases please identify the system used to create, store, and/or maintain that data. The data should be exported to a spreadsheet or delimited text files, using pipe ("|") or another appropriate delimiter, in a manner that preserves the precision of and relationships among the original data, and with a schema description containing column names and data types/sizes.

6. Data is to be accompanied by documentation, such as a data dictionary or README file, sufficient to understand the meaning of all fields in the data provided and the methods, models and data used in their calculation.

7. Documents shall be produced in the order in which they appear in Your files, and Documents shall not be shuffled or otherwise rearranged. Documents that were stapled, clipped, or otherwise fastened together in their original condition shall be produced in such or equivalent form.

8. To the extent applicable to any response to any item within this request, datasets produced shall include any field available to You that distinguishes between trader type, such as "commercial or non-commercial" or, if available, at a more detailed level.

9. If any responsive Documents are withheld under a claim of attorney-client privilege, attorney work product doctrine, or any other privilege or immunity from discovery, You are requested to provide the information required by Federal Rule of Civil Procedure 26(b)(5), including the following information in sufficient detail to permit the Court to rule on Your claim:

    a. the nature of the privilege being asserted, or other rule relied upon, and the facts supporting Your assertion thereof;

    b. the party who is asserting the privilege; and

    c. the following information about each purportedly privileged Document:

        i. the author, primary addressee, and secondary addresses or persons copied, including the relationship of those persons to any party in this litigation and the author of the Document;

        ii. a description sufficient to identify the type, subject matter, and purpose of the Document;

        iii. all persons to whom its contents have been disclosed;

        iv. the date the Document was prepared, the date the Document bears, the date the Document was sent, and the date the Document was received; and

        v. a description of the place where each copy of the Document is kept.

10. If a portion of any responsive Document is protected from disclosure by privilege, work product, or otherwise, the Document must be produced with redaction of the portion claimed to be protected.

11. If any objection is made to any of these Requests, the response shall state whether Documents are being withheld from inspection and production based on such objection, or whether inspection and production of the responsive Documents will occur notwithstanding such objection.

12. The specificity of any Request herein shall not be construed to limit the generality or reach of any other Request herein.

13. Unless otherwise specified, the Requests are not limited as to time.

14. If any requested Document was, but no longer is, in Your possession, custody, or control, state whether a copy thereof reposes in the possession, custody or control of some other person. If any responsive Document was, but is no longer, in Your possession, custody or control, please state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of. For each instance, please state the date or approximate date of such disposition and explain the circumstances surrounding such disposition.

### III. DOCUMENTS REQUESTED

1. Documents and data sufficient to show the following information for each Market Participant and/or Customer of Yours that purchased or sold a May 2020 NYMEX WTI futures contract (including as part of any spread trade[1] or as part of any TAS order) on April 20, 2020:

    a. The following details for open positions[2] in the May 2020 NYMEX WTI futures contract (including any open spread position involving the May 2020 NYMEX WTI futures contract) at the end of trading[3] on April 17, 20, and 21, 2020 and, to the extent available, at 9:00 a.m. central time on April 20 2020 and 1:30 p.m. central time on April 21, 2020: size of open position, cost basis of open position, open trade equity of open position, date(s) open position was established, account number(s) (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any CME account numbers), account name(s), identity of account owner(s), last known address or other contact information for each account owner(s).

---

[1] A "spread trade" is a trade involving the simultaneous purchase of one futures contract and sale of another futures contract.
[2] "Open positions" refers to a long or short position that has not been liquidated.
[3] "End of trading" refers to 4:00 p.m. central time.

    b. The following details for each purchase and/or sale of the May 2020 NYMEX WTI futures contract on April 17, 20, and 21, 2020 (including any purchase or sale as part of a spread trade): time of purchase(s) and/or sale(s) (time should include most precise time available, including millisecond), price, volume, order type (*e.g.*, market, limit, stop), any aggressor[4] tag or identifier, contract symbols and spread ID or similar trader identifier(s) sufficient to match up multiple legs of any spread trade, Tag 50 ID[5] and Tag 50 name, name and ID of Clearing Firm, name and ID of FCM or other executing firm, account number(s) (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any CME account numbers), account names, identity of account owner(s), last known address or other contact information for each account owner(s).

    c. The following details for any purchase or sale of the May 2020 NYMEX WTI futures contract made via TAS on April 17, 20, and 21, 2020: time of TAS order(s) (time should include most precise time available, including millisecond), the amount of any premium or discount to the settlement price, volume of purchase(s) and/or sale(s), any aggressor tag or identifier, contract symbols and spread ID or similar trader identifier(s) sufficient to match up multiple legs of any spread trade, Tag 50 ID and Tag50 name, name and ID of Clearing Firm, name and ID of FCM or other executing firm, account number(s) (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any CME account numbers), account names, identity of account owner(s), last known address or other contact information for each account owner(s).

    d. The following details for any Block Trades involving the May 2020 NYMEX WTI futures contract on April 17, 20, and 21, 2020 (including any purchase or sale as part of a spread trade): time of purchase(s) and/or sale(s) (time should include most precise time available), price(s), volume of purchase(s) and/or sale(s), contract symbols and spread ID or similar trader

---

[4] "Aggressor" is any order that triggers a trade immediately upon entering the book.
[5] A Tag 50 ID (sometimes referred to as an Operator ID) is used to identify trading participants.

7

    identifier(s) sufficient to match up multiple legs of any spread trade, Tag 50 ID and Tag50 name, name and ID of Clearing Firm, name and ID of FCM or other executing firm, account number(s) (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any CME account numbers), account names, identity of account owner(s), last known address or other contact information for each account owner(s).

e. The following details for any EFPs involving the May 2020 NYMEX WTI futures contract on April 17, 20, and 21, 2020: time of purchase(s) and/or sale(s) (time should include most precise time available), price(s), volume of purchase(s) and/or sale(s), Tag 50 ID and Tag50 name, name and ID of Clearing Firm, name and ID of FCM or other executing firm, account number(s) (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any CME account numbers), account names, identity of account owner(s), last known address or other contact information for each account owner(s).

f. The following details for open positions in any Option contract involving the May 2020 NYMEX WTI futures contract (including any spread Option position involving the May 2020 NYMEX WTI futures contract) at the end of trading on April 17, 20, and 21, 2020: size of open position in each Option contract, futures equivalent value ("FEQ") of open position(s), account number(s) (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any CME account numbers), account name(s), identity of account owner(s), last known address or other contact information for each account owner(s).

g. The following details for any Option trades (including spread options) involving the May 2020 NYMEX WTI futures contract on April 17, 20, and 21, 2020: time of purchase and/or sale (time should include most precise time available, including millisecond), price, strike price, put/call, expiration, any exercises or assignments, volume, contract symbols and spread ID or similar trader identifier(s) sufficient to match up multiple legs of any spread trade, Tag 50 ID and Tag 50 name, name and ID of Clearing Firm, name

8

and ID of FCM or other executing firm, account number(s) (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any CME account numbers), account names, identity of account owner(s), last known address or other contact information for each account owner(s).

h.  The following details for any Deliveries made or taken in respect of the May 2020 NYMEX WTI futures contract: the date(s) of the Deliveries, name of issuer, name of stopper, volume of deliveries made or taken, name and ID of Clearing Firm, account number(s), (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any CME account numbers), account names, identity of account owner(s), last known address or other contact information for each account owner(s), delivery location and quality, notice of intention to accept, delivery instructions and any amendments to the delivery instructions as required by NYMEX Rule 200105A(1),(2) and 200105C. This request includes the "Method of delivery" as listed in the delivery instructions pursuant to NYMEX Rule 200105A(2)(e).

i.  The following details for each purchase and/or sale of the May 2020 ICE WTI futures contract on April 20, 2020 (including any purchase or sale as part of a spread trade, cash settlement or TAS order): time of purchase(s) and/or sale(s) (time should include most precise time available, including millisecond), price, volume, order type (*e.g.*, market, limit, stop), any aggressor tag or identifier, contract symbols and spread ID or similar trader identifier(s) sufficient to match up multiple legs of any spread trade, name or identity of person or firm entering trade, name and ID of Clearing Firm, name and ID of FCM or other executing firm, account number(s) (including any Clearing Firm account numbers, FCM or other executing firm account numbers, and any ICE account numbers), account names, identity of account owner(s), last known address or other contact information for each account owner(s).

2. To the extent not already requested in Request 1 above, Documents and data sufficient to aggregate or disaggregate all trading accounts held by each Market Participant and/or Customer of Yours that purchased or sold a May 2020 NYMEX WTI futures contract (including as part of any spread trade or as part of any TAS order) on April 20, 2020. This includes, without limitation, Documents and data sufficient to aggregate or disaggregate all: (a) account numbers and account names (including any Clearing Firm account numbers or names, FCM or other executing firm account numbers or names, and any CME account numbers or names), (b) Tag 50 IDs and Tag 50 names, (c) name of Clearing Firm (d) name of FCM or other executing firm(s), and (d) any other account identifying data that corresponds with a single trader, entity, or "house" account. The data should also provide the corresponding identity of the account owner(s) for each identified account number or account name and the last known address or contact information for each account owner.

3. Documents sufficient to interpret the fields or other information contained in each of the datasets or other Documents produced, such as a data dictionary or README file defining the fields or other information contained in the datasets.